Lauderbaugh, Appellant, *v.* Williams, Appellant.

Argued April 17, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Joseph P. Flanagan, Jr.,* with him *Lewis R. Crisman,* and *Ballard, Spahr, Andrews & Ingersoll,* for Mildred B. Lauderbaugh.

*H. R. Van Deusen, Jr.,* with him *Clement J. Reap,* for Mervyn M. Williams.

OPINION BY MR. JUSTICE O'BRIEN, November 29, 1962:

These appeals are from decrees entered in an action to quiet title and an equity action to set aside a deed of conveyance of land. The cases involve the same questions and were tried together. In 1940, Mildred B. Lauderbaugh and her husband, Dayton S. Lauderbaugh, became the owners by purchase of land in Wayne and Monroe Counties which included a lake known as Watawga. The Lauderbaughs laid out some lots in a plan on the westerly shore and began the sale of lots in 1949. In June, 1951 the purchasers of the lots and the Lauderbaughs entered into an agreement whereby, as a condition precedent, future purchasers of land along the shore of the lake were required to be members of the Lake Watawga Association. The Asso-

ciation was formed to control the development along the shore of the lake. Many attractive homes representing a substantial investment had been erected. After the formation of the Association and agreement other lots were sold to those who became members of the Association and homes were built. Mrs. Lauderbaugh instituted an action to quiet title in March, 1958, her husband being deceased, to remove a cloud on her title by seeking to have the agreement restricting the sale of property to members of the Association declared void. In February, 1960, Mrs. Lauderbaugh, together with Asher Seip, Jr., and Jacob Seip were named defendants in a complaint in equity to set aside a deed of December 3, 1959, for land along the lake shore from Mrs. Lauderbaugh to Asher Seip, Jr.,—Jacob Seip being the partner of Asher Seip, Jr., grantee in the deed—as a violation of the agreement of June 1951, and to enjoin Mrs. Lauderbaugh from conveying land along the lake shore except to persons approved for membership in the Lake Watawga Association. The plaintiffs in the equity case were mostly the persons named as defendants in action to quiet title. The trial court entered a decree upholding the validity of the agreement but restricted its application to the westerly shore of the lake and entered a decree setting aside the deed from Mrs. Lauderbaugh to Asher Seip, Jr., and enjoining her from conveying land on the western shore of the lake except in accordance with the agreement of June, 1951, and in accordance with the rules, regulations and by-laws of the Lake Watawga Association. Both sides filed exceptions, which exceptions were dismissed, thereby giving rise to the instant appeals.

The agreement of June, 1951 provides that: "The First Parties [the Lauderbaughs], for themselves, their heirs and assigns, agree that membership in the Lake Watawga Association shall be a condition precedent for future purchasers of land along the shore of Lake

Watawga; that in the event such prospective purchasers qualify as members as aforesaid, the First Parties will, upon payment of purchase price, execute and deliver to them deeds. . . ."

The pertinent portions of the by-laws of the Lake Watawga Association provide as follows: "Article V. Membership. Section 1. No person shall be eligible to membership in the Association who does not meet the requirements hereinafter specified. Such person shall be either the owner or a prospective owner of property along the shore of Lake Watawga, but such ownership or prospective ownership shall not in itself entitle such person or persons to become a member of this Association. This by-law can be amended only by a vote of three-fourths of the total membership of the Association. . . .

"Section 4. Application for membership shall be made to the Secretary, and by him referred to the Board of Directors, who shall act upon the same at their earliest convenience. Notice of the application for membership shall be given to every member at least 10 days prior to the time when such application shall be acted upon. The Board of Directors shall carefully consider any objections made to applicants. An Investigation Committee composed of three members of the Board of Directors shall be appointed by the President of the Board, which Committee shall report its findings to the Board of Directors before the application is acted upon. If written objections are filed by one member of the Association, when the membership is less than ten, the applicant shall be rejected. If written objections are filed by three or more members, when the membership of the Association is more than ten, the applicant shall be rejected. If written objections are filed by less than three members, when the membership is more than ten, the applicant may be elected by a two-thirds vote of the Directors present when such application is considered."

Essentially the question is the legality of the agreement restricting alienation of lake shore property to members of the Association only. This precise question has never before been decided by this court. However, while we do not have prior cases presenting similar factual conditions we are amply supplied with firmly established legal principles. Every restraint on alienation of real property is not necessarily void. True, such restraints are not favored in the law. Further, an absolute restraint is against public policy and, therefore, of no legal effect. However, a limited and reasonable restraint on the power of alienation may be valid. See, Restatement, Property, §406, and 26 C.J.S., Deeds, §145.

Whether the agreement of June, 1951 is construed to create a condition precedent, a covenant not to convey or anything else, it is clear that its effect, when read in conjunction with the requirements of membership in the Association, is to limit unreasonably the free alienation of land bordering Lake Watawga, since conveyances may be made only to members of the Association. Control over the membership of the Association lies not with the grantor, but with others, the consent of all but two of whom must be obtained in order for any prospective alienee to be eligible for membership.

We do not seek to impugn the motives of the members of the Association and, for the purposes of deciding the issues presented, assume that their motives are of the purest, their sole concerns being the orderly development of the area and, quite properly, the protection of their investments. Be that as it may however, the fact remains that no standards for admission to the Association are set out in its by-laws and it is possible that three members by whim, caprice or for any reason, good or bad, or for no reason, could deny membership to any prospective alienee, thereby depriv-

ing Mrs. Lauderbaugh of her right to alienate her land. It must be further noted that the restriction is not limited in time and purports to be a perpetual one, a fact which militates strongly against its enforcement.

The decree of the court below, entered at No. 73 January Term, 1958, which is appealed from at Nos. 202 and 235, is reversed insofar as it declares the agreement of June, 1951 to be valid and binding with respect to certain lots on the westerly shore of Lake Watawga, and affirmed in all other particulars.

The decree of the court below, entered at No. 1 January Term, 1960, which forms the basis of the appeals at Nos. 203 and 234, is reversed.

Each party to bear own costs.