**Mowers v. Mowers**

*James G. Morgan,* for plaintiffs.
*Louis J. Adler,* for defendants.

BAYLEY, *J.,* October 31, 1994—
"Oft our displeasures, to ourselves unjust,
Destroy our friends and after weep their dust;
Our own love waking cries to see what's done,
While shame full late sleeps out the afternoon." [1]

Trial was held in this equity adjudication on October 19, 1994. Plaintiffs are Henry D. Mowers and his wife, Cornelia M. Mowers. Henry D. Mowers, is the son

---

1. Shakespeare, *All's Well that Ends Well,* Act v, sc. 3.

of defendants, Henry E. Mowers and Joan Mowers. He is a sales manager for the central Pennsylvania territory of the Duron Paint Company which is headquartered in Beltsville, Maryland. This familial dispute has its genesis in a deed dated February 16, 1984. In that deed, defendants conveyed to their son lot 3 containing 2.71 acres in their subdivision in Hampden Township. The subdivision had been approved on September 7, 1982, and recorded. It contains three lots and other land not designated within the confines of those lots. The parents live on lot 1, Mowers' older sister lives on lot 2, and Mowers and his wife live on lot 3. The deed contains the following reservation and restriction:

*"This deed is subject to the reservation and restriction that the property shall not be conveyed by the grantee during the lifetime of the grantors herein without their written joinder in any deed of conveyance.* Provided further, however, that this reservation and restriction upon alienation by the grantee herein shall be subordinate to and shall not affect the lien of any mortgage given by the grantee herein to Harris Savings Association, of Harrisburg, or the lien of any judgment entered upon any note or bond accompanying said mortgage; it being the agreement of the grantors herein that the mortgagee in event of default in the terms of any such mortgage the right of mortgagee to enforce its authority under said note or bond and mortgage shall not be affected hereby." (emphasis added)

Mowers had been told by his parents from when he was a young boy that they would be deeding some land to him. The consideration set forth in the deed to Mowers for lot 3 is "natural love and affection." However, the actual consideration was $600, although the lot was worth $8,000 to $10,000 at the time of transfer. The parents did not require immediate payment

of the $600. On February 21, 1984, Mowers obtained a $42,000 construction loan from Harris Savings Association. He borrowed another $3,700 from his parents, and he and his father and some other family members and friends constructed a substantial house on lot 3. Mowers moved into that house in August 1984. He married Cornelia M. Mowers in May 1985. On August 1, 1986, Mowers paid his parents $4,300, without interest, by a check noting that the $4,300 was for "loan and land."

After his marriage, Mowers sought the joinder by his parents to put his wife's name on his deed, which was denied. Mowers testified that he understood at the time he was deeded lot 3 that his parents wanted their subdivision to remain a family enclave, and that the deed restriction setting forth that his lot could not be sold during the lifetime of his parents was intended to accomplish that desire. Mowers also testified that he had an understanding with his parents regarding his younger sister who was to receive land in the subdivision. The understanding was that Mowers would convey some of his land to his younger sister in order to obtain approval by Hampden Township of a further subdivision of a fourth lot for the sister from within the parents' subdivision. Township regulations require any fourth lot have a certain minimum of road frontage. In 1986, Mowers sought a variance from this requirement to facilitate subdivision of a lot to his younger sister. The Hampden Township Zoning Hearing Board denied the variance.

Hampden Township now requires a wider street than is currently in the subdivision. In 1990, in a further attempt to facilitate subdivision of a lot for his younger sister, Mowers sought a waiver from Hampden Township to construct a road and cul-de-sac with a width

less than the township required. The township denied the waiver. Mowers then paid an engineer $416 to provide sketch plans for a road access and cul-de-sac that would meet township requirements. The proposal requires a reconfiguration of the three existing lots in the subdivision.[2] The estimated cost to engineer such a project is $3,645, and $20,000 for construction. If Mowers undertakes these expenditures and has the road and cul-de-sac constructed (there was never an understanding with his parents that he would pay such expenses), and he, his older sister, and his parents provide the land required to obtain subdivision of a lot for the younger sister,[3] the parents have agreed to join with Mowers placing his wife on the deed to lot 3. They have refused to agree to remove the restriction in the deed prohibiting him from conveying the property to others during their lifetime.

In 1992, Mowers sought refinancing of his property in order to secure a lower mortgage interest rate and to obtain funds to invest in another property. Refinancing was approved by a financial institution that required the restriction in the deed to be deleted. The parents would not consent. Mowers then sought refinancing from the holder of the mortgage, Harris Savings Association. Harris refinanced without requiring that the deed restriction be deleted.

Corneila Mowers, after her marriage and before she learned of the deed restriction in 1986, paid $9,000 to repay a loan Mowers had taken to purchase lumber used to build the house. Cornelia Mowers invested

2. When the township approved the subdivision of the three lots for the parents on September 7, 1982, it noted that, "There will be no further subdivision of lot no. 2 (the older sister's lot) until access is provided by way of a street built to township specifications."

3. Whether Mowers' oral understanding with his parents is legally enforceable is not an issue presently before us.

$1,000 toward finishing the basement in the house after she learned of the deed restriction. Additionally, about four years ago she contributed, with her husband, toward costs in excess of $10,000 to construct a garage and blacktopped driveway on the property.

## ISSUES

In this suit in equity to set aside the deed restriction, Mowers maintains that the restriction on lot 3 is an absolute restraint on alienation that is void as against public policy. Alternatively, he maintains that the restriction is otherwise unreasonable and should be stricken, or at the least, he should be allowed to convey his property to himself and his wife as tenants by the entireties. The parents, who did not testify, maintain that the deed restriction is a limited and reasonable restriction on the power of alienation.

## DISCUSSION

Plaintiffs rely on *Lauderbaugh v. Williams,* 409 Pa. 351, 186 A.2d 39 (1962). The Lauderbaughs purchased land which included a lake known as Watawga. They entered into an agreement with the sellers whereby, as a condition precedent, future purchasers of their land along the shore of the lake were required to be members of the Lake Watawga Association. The Supreme Court of Pennsylvania voided the restriction, noting:

"Every restraint on alienation of real property is not necessarily void. True, such restraints are not favored in the law. Further, an absolute restraint is against public policy and, therefore, of no legal effect. *However, a limited and reasonable restraint on the power of alienation may be valid.* See, Restatement, Property, §406,

and 26 C.J.S., Deeds, §145." (emphasis added) *Id.* at 355, 186 A.2d at 41.

The Supreme Court stated that, without seeking to impugn the motives of the members of the Lake Watawga Association, the restriction of ownership of the Lauderbaughs' property to members of that association, "is to limit unreasonably the free alienation of land bordering Lake Watawga, since conveyances may be made only to members of the association." The court held that the limitation deprived "Mrs. Lauderbaugh of her right to alienate her land." The court did state that, "It must be further noted that the restriction is not limited in time and purports to be a perpetual one, a fact which mitigates strongly against its enforcement." *Id.* at 355-356, 186 A.2d at 41.

Defendants rely on *Kopp v. Kopp,* 339 Pa. Super. 230, 488 A.2d 636 (1985). The Kopps entered into a separation agreement prior to their divorce. Under the agreement, wife relinquished all rights to support and maintenance. Husband agreed that, in exchange, wife would have sole occupancy of the marital residence for herself and her children so long as she paid all mortgage payments, utilities bills, and taxes. The agreement further provided: "Should the wife no longer use. the premises as her residence the same shall be sold at a price agreeable to both husband and wife and the net proceeds therefrom shall be divided equally between husband and wife." Husband specifically waived his rights, under the Act of May 10, 1927, P.L. 884 (68 P.S. §501).[4] The Act provides that property held as tenancy by the entireties reverts to a tenancy in common following divorce, subject to sale in equity with the proceeds divided equally. The trial court, relying on

4. Reenacted at 23 Pa.C.S. §3507(a).

*Hyatt v. Hyatt,* 273 Pa. Super. 435, 417 A.2d 726 (1979), held that the separation agreement was not a bar to the former husband's statutory right to partition.

In *Hyatt,* a married couple entered into a written agreement which provided that upon divorce the former husband would remain in occupancy of the former marital residence, then held by the entireties, in return for his promise to divide the proceeds of any eventual sale with his former wife. She also received a car and $1,000 in consideration of her husband's promise. Following divorce when wife filed an action to partition the real estate, husband argued that the written agreement barred any partition. The Superior Court held that the agreement did not limit the wife's absolute right to seek partition for any discernible time. The court concluded a division of the proceeds upon *any eventual sale* was an "indefinite postponement of the right to partition [which] is contrary to the policy of the Commonwealth which is to encourage free alienation." *Id.* at 440, 417 A.2d at 729. Since the agreement constituted an unlawful restraint upon alienation of the property, the court held that it was unenforceable and the property should be partitioned.

In *Kopp,* the Superior Court reversed the trial court, stating:

"It is true that any agreement to modify or postpone the time of partition may not place a restraint upon alienation that extends beyond a 'reasonable' period of time. *Shoup v. Shoup,* 469 Pa. 165, 364 A.2d 1319 (1976). Furthermore, we believe that the *Hyatt* court properly held that by not limiting the wife's absolute right to seek partition for any discernable [sic] time, the agreement constituted an unlawful restraint upon alienation of the property and was, therefore, unenforceable. A clear factual distinction exists, however,

between *Hyatt* and the case at bar. The Hyatts' separation agreement obligated the husband to divide the proceeds with the wife if and when a sale of the property were to occur. In the words of the court, 'although a partition may be modified or postponed for a reasonable time by agreement of the parties, the instant agreement did not limit appellant's absolute right to seek partition for any discernable [sic] time.' *Hyatt v. Hyatt, supra,* 273 Pa. Super. at 440, 417 A.2d at 729. Whether or not he continued to occupy the premises, there were no conditions placed upon the husband, the occurrence of which would have triggered the wife's right to compel partition.

"As was the husband in *Hyatt,* appellant in the case at bar was already occupying the residence at the time the separation agreement was signed; however, appellant's ability to restrain partition in the instant case is conditioned upon her continued use of the premises as her residence. Appellee's right to compel partition will be automatically triggered (1) if appellant no longer wishes to remain in the home, or (2) upon the death of appellant. Waiver of appellee's right to seek partition for, at most, the lifetime of appellant seems to be postponement for a period both reasonable and sufficiently discernable [sic].

"[2] The separation agreement into which the Kopps entered limits any restraint upon appellee's power to compel partition to a period which cannot extend beyond the life of appellant. Such a time period, while not definite, is surely not *unreasonable.* See *e.g., McDowell v. McDowell,* 61 N.C.App. 700, 704, 301 S.E.2d 729, 731 (1983) ('[I]t is clear that an agreement providing for the wife's continued possession of property for her life is valid and not subject to attack as an unreasonable restraint on alienation. In this case, the longest possible

amount of time during which this property could remain in the wife's possession without agreement to sell is for her life.') See also, *Condrey v. Condrey,* 92 So.2d 423, 426 (Fla. 1957) ('An agreement not to partition during the life of any of the tenants does not appear to us to be for an unreasonable time.').

"While Pennsylvania courts have not heretofore provided any clear guidelines as to what constitutes a 'reasonable' period of time respecting restraints on alienation, the Restatement of Property (1944) offers some guidance:

"SECTION 412. RESTRAINTS ON THE POWER TO COMPEL PARTITION.

"A restraint on the power of a co-tenant to compel partition, created to last for a reasonable time only, is valid.

"Comment c of section 412 states that '(t)he meaning of "a reasonable time" is set forth in section 173, comment c' which, in turn, provides in pertinent part:

"c. *What constitutes a reasonable period of time.* The period of time for which the creator of a future interest can exclude the power to compel partition or the liability thereto must be 'reasonable.' When the stipulated period of time is not measured by lives in being at the time of the creation of such future interest, or by a period of years not exceeding twenty-one, or by a combination of such lives and years, such period of time is not reasonable. *When the stipulated period is measured by such lives, or by such period of years, it is reasonable.* Situations between these two extremes present an issue of reasonableness. (emphasis added) See *Rice v. Rice,* 468 Pa. 1, 359 A.2d 782 (1976); *accord Hale v. Scanlon,* 88 D.&C. 506 (1953). We believe that this definition of reasonableness, adopted by analogy from the rule against perpetuities, is a sen-

sible one. *While it is the policy of this Commonwealth to encourage free alienation, the concerns underlying this policy are not present in a case such as the one before us.* The agreement in the instant case was not an unreasonable restraint on alienation." (footnote omitted) (emphasis added) *Kopp, supra* at 234-36, 488 A.2d at 638-39.

The rule against perpetuities, used by analogy in *Kopp,* is that no interest is valid unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest. *Pearson Estate,* 442 Pa. 172, 275 A.2d 336 (1971). While the Superior Court in *Kopp* found the non-perpetual contracted waiver of the right to partition marital property to be a reasonable restraint on alienation, the Supreme Court in *Lauderbaugh v. Williams, supra,* did not rely solely on the perpetual nature of the restraint in holding that the restriction on alienation in that case was unreasonable. Therefore, a restraint on alienation is not automatically reasonable merely because it does not violate the rule against perpetuities.

In the case sub judice, the parents clearly intended to, and did, convey a fee simple estate to their son. The language in the deed sets forth that the grantors, "do by these presents grant, bargain, sell and convey unto grantees forever, his heirs and assigns," lot 3. See *Kessler v. Smith,* 62 York Leg. Rec. (1948). We agree with the parents, nevertheless, that the limitation on the right of alienation in their deed to their son is not absolute because it is limited to their lives. See *Grossman v. Hill,* 384 Pa. 590, 122 A.2d 69 (1956).[5]

---

5. Contrast the facts in *Kessler v. Smith, supra,* where a fee simple deed to a grantee with a restriction that she, "shall not be at liberty to sell the same within described property or to mortgage, the same,

However, the restriction could last for the entire life of Mowers, or longer, depending on the order that the Grim Reaper strikes.[6]

Mowers wants his wife to become a tenant by the entireties. If he dies before both of his parents die and wills the property to her, the deed restriction cannot prevent her from becoming the sole owner of a property in which she had made a substantial investment.[7] Then she will be the only "family" stuck in the family enclave. If that occurs, the market value of the property will be subject to Pennsylvania inheritance tax because Mowers is now prevented by his parents from conveying the property into a tax exempt tenancy by the entireties.[8] We find that the deed restriction on alienation that prevents Mowers from transferring the property into a tenancy by the entireties with his wife is totally unreasonable. Its only purpose is to serve the spite of the parents. It does not benefit them in any way. It is against the public policy of the Commonwealth which states that, "The family (husband and wife) is the basic unit in society and the protection and preservation of the family is of paramount public concern." 23 Pa.C.S. §3103(a).

---

but to be a home for her and *shall be for her children, after her death"* (emphasis added), was held to be repugnant to the fee and therefore void as an absolute restriction on the power of alienation. Citing *Huber v. Hamilton,* 211 Pa. 289, 60 A. 789 (1905); *Pattin v. Scott,* 270 Pa. 49, 112 A. 911 (1921).

6. The ages of Mowers and his parents are not in the record. All were in court. Mowers looks like he may be in his forties and his parents in their sixties or a little older.

7. The current value of the improvements Cornelia Mowers has invested into the property already constitute marital property.

8. 72 P.S. 9111(m) (Purdon Supp. 1994).

The deed restriction for all practicable purposes prevents Mowers from moving. While he could rent his house and not be in violation of the restriction, he cannot, until both of his parents die, sell the property and recoup his substantial investment.[9] The restriction severely limits his ability to seek any promotion that might be offered by his employer, or to take any other job that would require a move from this area. His wife is equally tied to the property. If Mowers rents the house, that would defeat the family enclave purpose of the deed restriction. As far as the *family* enclave goes, the parents and their son and their daughter-in-law have not been on speaking terms for about three years. Additionally, if Mowers spends the money for engineering and constructing a wider road and cul-de-sac, he will have paid far more than lot 3 was worth when his parents deeded it to him in 1984. Such an expenditure would be inconsistent with what his parents had told him he would receive, and with what he did receive.

In contrast to *Kopp v. Kopp, supra,* the parents in the present case conveyed to their son a fee simple estate. They retained no ownership interest in the property as did both parties in *Kopp.* In *Kopp,* a former husband was prevented by the Superior Court from partitioning

---

9. Restrictions on alienation of the grant of a fee must be strictly construed. *Sanders v. Mamolen,* 213 Pa. 359, 62 A. 981 (1906). Renting the house would not constitute a "deed of conveyance" as that term is used in the reservation and restriction clause in the deed of lot 3. "A deed which transfers ownership *(i.e.,* title) of real property is a deed of conveyance." P. Nicholson Wood, *Deeds of Conveyance in Pennsylvania,* commentary at 21 P.S. p. 13, citing Ladner, *Conveyancing in Pennsylvania* (2nd Ed.), p. 115.

marital property in which his former wife lived, because as part of a marital settlement agreement involving the mutual exchange of consideration, he specifically waived his statutory right to seek partition for as long as she remained in the home. The reservation and restriction the parents have placed on their son's fee simple estate here allows them to keep a yoke around his neck while interfering with his marriage. Unlike *Kopp,* the concerns underlying the policy in this Commonwealth to encourage free alienation are present. As in *Lauderbaugh v. Williams, supra,* we find that the reservation and restriction in the deed to Mowers of lot 3 *unreasonably* limits the free alienation of the land.

The parents also rely on a decision of this court in *Warden v. Taylor,* 24 Cumberland L.J. 83 (1973). In *Warden,* it was held that a right of first refusal to repurchase real estate at a fixed price for the lifetime of the seller was not an unreasonable restraint on alienation. Unlike *Warden,* the restraint against alienation in the present case absolutely prevents Mowers from securing any of the substantial equity he and his wife have invested in the property. That is unreasonable. We do not have to determine what the rights of the parties would be if the parents had secured a right of first refusal which would have allowed Mowers to sell the property either to them, or if the right was not exercised, to another party.

For the foregoing reasons, we will enter a decree nisi authorizing Mowers to transfer a deed of conveyance of lot 3 to himself and his wife as tenants by the entireties, and declaring that the reservation and restriction in the deed of lot 3 to Mowers from his parents, is null and void.

## DECREE NISI

And now, October 31, 1994, it is decreed:

(1) Henry Dennis Mowers is authorized to transfer a deed of conveyance to himself and his wife, Cornelia M. Mowers, as tenants by the entireties, to lot 3, which was conveyed to Henry Dennis Mowers by the deed of Henry E. Mowers, also known as Henry E. Mowers Jr., and Joan L. Mowers, his wife, by deed dated February 16, 1984 and recorded in the Office of the Recorder of Deeds of Cumberland County on February 21, 1984 in deed book O, volume 30, page 473.

(2) The following reservation and restriction in the deed recorded in deed book O, volume 30, page 473, is null and void:

"This deed is subject to the reservation and restriction that the property shall not be conveyed by the grantee during the lifetime of the grantors herein without their written joinder in any deed of conveyance. Provided further, however, that this reservation and restriction upon alienation by the grantee herein shall be subordinate to and shall not affect the lien of any mortgage given by the grantee herein to Harris Savings Association of Harrisburg, or the lien of any judgment entered upon any note or bond accompanying said mortgage; it being the agreement of the grantors herein that the mortgagee in event of default in the terms of any such mortgage the right of mortgagee to enforce its authority under said note or bond and mortgage shall not be affected hereby."