NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2049
_____

CGL, LLC,
                    Appellant

v.

WILLIAM G. SCHWAB; ANITA LAUDERMILCH; DEBRA A. FULTZ;
ELFRIEDE GARMAN; LLOYD KRUPPENBACH; LORETTA KRUPPENBACH;
WILLIAM GIERSCH; CAROL GIERSCH; MARY ANNE USNER; ARLAND L.
LANDO; SHARON A. LANDO; JOSEPH A. KULAGA; WILLIAM O. MORRELL;
VONITA B. MORRELL; CHARLES GOTTSCHALL; ROBERT BOYD; LAWRENCE
T. BRAUTIGAM; MARGARET F. BRAUTIGAM; ESTER LODEK; EDWARD
REINHART; RICHARD FISTER; EARL HERTZOG; MABEL HERTZOG; GERALD
NYE; JANET NYE; ROBERT HAINLEY; HELEN HAINLEY; KAY REDCAY;
BARRY REDCAY; STEVEN M. ENCK; JUDY D. ENCK; BECKY BUCHANAN;
CHARLOTTE M. GENTRY; HELEN COLEMAN; ROBERT BAUDER; JOHN HIGH;
SCOTT D. SMITH; GENE L. LYNCH; DEBORAH L. LYNCH; CLIFFORD E.
STOLTZFUS; RAYMOND W. MILEK; PARKSIDE MANOR HOMEOWNERS'
ASSOCIATION, INC.; DONALD E. HEINTZ; WENDY SCHMUCK, Executrix of the
Estate of Ruth Ann Schmuck, Deceased
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-11-cv-04593)
District Judge:  Hon. J. William Ditter, Jr.
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 21, 2015

Before:  FISHER, JORDAN, and GREENAWAY, JR., *Circuit Judges*.

(Filed: January 22, 2015)
_____

OPINION*

_____

JORDAN, *Circuit Judge*.

CGL, LLC ("CGL") appeals an order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment against it and in favor of William G. Schwab, a bankruptcy trustee with control of certain real property in Lancaster County (the "Property"), and in favor of the individuals residing on the Property (the "Parkside Residents"). The District Court did not err in concluding that CGL lacked a claim because CGL is not a beneficiary of a purportedly restrictive covenant on the Property, and we will therefore affirm.

I.    **Background**

The Property is located in East Cocalico Township (the "Township"), and, prior to 2007, was owned by Vistacare Group, LLC ("Vistacare"). Vistacare operated a retirement community there known as Parkside Manor Retirement Community ("Parkside"), containing 45 lots. Lots 1-44 were zoned and subdivided by individual residences, and, on Lot 45, Vistacare maintained an assisted-living facility. In 1984, the Township approved and accepted for recording a land development plan for Parkside which included certain restrictions on the land. Pertinent to this litigation is Restriction No. 1, which provided as follows:

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Fee title to the lots shown on this plan will not be transferred to the parties having residences constructed upon the said lots but the title will remain in the Developer, his heirs and assigns.

(App. at 346, 401, 402, 1469.)

On May 7, 2007, Vistacare filed a bankruptcy petition in the United States Bankruptcy Court for the Middle District of Pennsylvania and Schwab was appointed as Chapter 7 Trustee to manage the bankruptcy estate.[1] In an effort to liquidate Vistacare's assets, Schwab filed a motion in the Bankruptcy Court on July 24, 2008, seeking permission to sell Parkside either as one parcel or as two separate parcels, one containing Lots 1-44 and a second containing Lot 45. In the motion, Schwab stated that the sale of Parkside as two separate parcels would "be contingent upon approval by East Cocalico Township of the modification of Restriction No. 1" so as to allow Lot 45 and Lots 1-44 to be separated. (App. at 649.) Two months later, the Bankruptcy Court approved a public auction of Parkside, "free and clear of all liens and encumbrances." (App. at 652.)

Schwab promptly arranged for the auction of Lots 1-44 and Lot 45, but, because of the Parkside Residents' objections to the sale of Lots 1-44, Schwab offered only Lot 45 for sale. Grant Wise successfully purchased Lot 45 for $177,500 at the auction and later assigned his interest in the agreement of sale to CGL, a Pennsylvania limited liability company that he formed sometime in late 2008 or early 2009. Before closing on the sale of Lot 45, CGL's counsel, Mark Yoder, requested confirmation from Thomas Goodman,

---

[1] Although the Property is located in Lancaster County, which is in the Eastern District of Pennsylvania, Vistacare chose to file for bankruptcy in the Middle District of Pennsylvania for reasons that are not readily apparent from the record and are not pertinent to this appeal.

the Township's attorney, that Restriction No. 1 did not apply to Lot 45. Goodman responded that the Township would not consider the sale of Lot 45 a violation of Restriction No. 1 because no residence had been built on Lot 45 and Restriction No. 1 only referred to transferring ownership to those having residences on the Property. As further confirmation, Schwab filed a motion with the Bankruptcy Court to approve the sale of Lot 45 to CGL as free from Restriction No. 1. The Bankruptcy Court granted Schwab's motion, and the sale of Lot 45 to CGL closed soon after.

While the sale of Lot 45 was being finalized, Schwab, Goodman, and counsel for the Parkside Residents, Aaron Marines, discussed the removal of Restriction No. 1 from Lots 1-44 so that they could be sold to the Parkside Residents. At an August 5, 2009 meeting of the Board of Supervisors for the Township, the Board, by means of a "Declaration" drafted by Marines, voted to approve the removal from Lots 1-44 of all the restrictions, including Restriction No. 1. Two days later, Schwab sent to CGL a draft of the unsigned Declaration.

To effectuate the sale of Lots 1-44, Schwab filed adversary actions against the Parkside Residents, seeking a determination of whether the residences located on the lots were mobile homes that belonged to their owners or were permanent structures that belonged to the bankruptcy estate. After the Township approved the Declaration providing for the removal of Restriction No. 1, Schwab filed Notices of Settlement resolving the adversary actions with the Parkside Residents by allowing them all to purchase their individual lots for $37,000 each, "free and clear of all liens and encumbrances." (App. at 752-53.) Schwab and the Township representatives signed the

4

Declaration and it was duly recorded in the Office of the Recorder of Deeds of Lancaster County. Schwab also sought and obtained Bankruptcy Court approval of the sale of the common areas and remaining lots in Parkside to the newly-created Parkside Homeowner's Association.

CGL had its own request before the Bankruptcy Court. It wanted leave to file suit against Schwab in the Lancaster County Court of Common Pleas,[2] so that it could challenge the sale of Lots 1-44 and seek enforcement of Restriction No. 1. The Bankruptcy Court granted CGL's motion. That decision was later affirmed by the United States District Court for the Middle District of Pennsylvania, *In re Vistacare Grp, LLC*, 2011 WL 2111997 (M.D. Pa. May 26, 2011), and by this Court, *In re Vistacare Grp, LLC*, 678 F.3d 218 (3d Cir. 2012).

As permitted, CGL filed suit against Schwab in Lancaster County. Schwab then filed a Notice of Removal, taking the case from the Court of Common Pleas to federal court, on the basis that he was being sued as a federal official. The case thus ended up before the United States District Court for the Eastern District of Pennsylvania. CGL later filed an amended complaint and then a second amended complaint, adding the Parkside Residents as additional defendants. After the close of discovery, all parties filed

---

[2] A party seeking to sue a court-appointed bankruptcy receiver must first obtain leave of the appointing court. *Barton v. Barbour*, 104 U.S. 126, 128 (1881); *In re Vistacare Grp, LLC*, 678 F.3d 218, 235 (3d Cir. 2012) (stating that a party proposing to sue a trustee must make out a prima facie case against the trustee, showing that its claim is "not without foundation," and noting that that standard involves a greater degree of flexibility than the Rule 12(b)(6) motion to dismiss standard (internal citation and quotation marks omitted)).

cross-motions for summary judgment.  The District Court granted Schwab's and the

Parkside Residents' motions and denied CGL's.  This timely appeal followed.

## II.    Discussion[3]

CGL primarily contends that the District Court erred in holding that CGL was not

an intended beneficiary of Restriction No. 1 and therefore could not enforce that

restriction.  Its argument is without merit.[4]

Under Pennsylvania law, a restrictive covenant can be enforced by a party to the

agreement containing the covenant or by an intended beneficiary of the covenant.[5]

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1442.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review the District Court's grant of summary judgment de novo and "view inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party." *Montanez v. Thompson*, 603 F.3d 243, 248 (3d Cir. 2010) (internal quotation marks omitted).  Summary judgment is appropriate where the court is satisfied that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).

[4] CGL makes other arguments that are similarly unpersuasive.  It says that the District Court erred in characterizing its claims as being for violations of due process rights.  But, in fact, in its Second Amended Complaint, CGL specifically notes that "[t]he sales of the individual lots violate Restriction No. 1, are unlawful and have caused damage to CGL's property interests in Lot 45" and that "[t]he Declaration is an attempt to deprive CGL of its property rights without notice and without due process of law." (Second Amended Complaint, ¶¶ 24, 25.)  Furthermore, while CGL contends that it never asserted a due process violation, it does not argue that the District Court's ruling on the merits of any such due process claim was in error.  CGL says that the District Court erred in concluding that Restriction No. 1 was properly removed from Lots 1-44 before the sale of those lots to the Parkside residents.  As explained below, however, CGL was not an intended beneficiary of Restriction No. 1 and thus, even if the restriction was improperly removed, CGL lacks any standing to enforce the restriction.

[5] The District Court concluded that Restriction No. 1 was not a restrictive covenant but continued to hold that, even if it were a restrictive covenant, CGL was not

6

*Mariner v. Rohanna*, 92 A.2d 219, 220 (Pa. 1952) ("The persons initially entitled to enforce the obligation of a promise respecting the use of land are the promisee and such third persons as are also beneficiaries of the promise." (internal quotation marks omitted)). For a person or entity who is not a party to the restriction – such as CGL in this case – the right to seek enforcement "depends on whether or not the restrictive covenant or agreement was imposed on the land owned by [the] defendant for the benefit of the land owned by [the] plaintiffs who are seeking to enforce the restriction." *Fey v. Swick*, 454 A.2d 551, 554 (Pa. Super. 1982) (internal quotation marks omitted). That question "is determined largely by the intention of the parties." *Id.* (internal quotation marks omitted). Thus, in order to enforce Restriction No. 1 as it pertains to Lots 1-44, CGL would have to establish that the restriction was intended to be a burden on Lots 1-44 and a benefit for Lot 45.

CGL does not point to any language in the deed to Lot 45 to show that the purchase of Lot 45 conferred a right to enforce restrictions pertaining to Lots 1-44, nor to any language within Restriction No. 1 to show that it was intended to benefit Lot 45. Indeed, by CGL's own admission, "no evidence exists of the intention of either the East Cocalico Board of Supervisors or the Developer in plac[ing] Restriction No. 1 on the [Parkside land development] Plan, beyond the actual language of the restriction." (Appellant's Br. at 5-6.) That language gives a benefit only to the "developer, his heirs and assigns" by stating that fee title to the lots will remain with them. (App. at 346, 401,

_____

an intended beneficiary of it and thus could not seek its enforcement. Because we agree with the District Court that CGL was not an intended beneficiary, we do not reach the issue of whether Restriction No. 1 was a restrictive covenant under Pennsylvania law.

402, 1469.) CGL provides no legal authority for its assertion – which it makes in a footnote in its Opening Brief – that, as the purchaser of Lot 45 in a bankruptcy auction, it is an assign of the developer of the lots. Furthermore, CGL and Schwab agreed at the time of the sale of Lot 45 that Restriction No. 1 did not apply to that lot because there was no residence constructed on it. After purchasing Lot 45 free from the burden of Restriction No. 1, CGL cannot now contend that, simply by owning a lot near Lots 1-44, it became the beneficiary of Restriction No. 1 and acquired the right to enforce that restriction, which pertains only to Lots 1-44.

## III.    Conclusion

For the foregoing reasons, we will affirm the District Court's grant of summary judgment for Schwab and the Parkside Residents.