454 A.2d 551

**Robert F. FEY; Hugh Dates and June E. Dates, Husband and Wife; Wyllis W. Mead, Jr. and Carol S. Mead, Husband and Wife,**

**v.**

**John M. SWICK and Forest Investment Corporation, Inc.**

**Appeal of John M. SWICK.**

Superior Court of Pennsylvania.

Argued Sept. 2, 1981.

Filed Dec. 17, 1982.

David W. Swanson, Warren, for appellant.

Patrick J. Kronenwetter, Emporium, for appellees.

Before WICKERSHAM, WIEAND and BECK, JJ.

WIEAND, Judge:

In this class action brought on behalf of 62 owners of residential lots, the trial court enjoined the construction of a 56 unit apartment complex on a ten acre tract of land owned by the appellant, John M. Swick. The principal issue on appeal is whether the members of the class who own lots in a separate subdivision can enforce building restrictions imposed upon the ten acre tract by a common grantor in a prior deed. The trial court held that the building restrictions were enforceable. We affirm.

The ten acre parcel of land which is the subject of this controversy was part of a 60 acre tract in Pleasant Township, Warren County, owned by Margaret E.I. Newbold. On August 7, 1950, Ms. Newbold recorded a plan for a 64 lot residential subdivision, to be known as the Irvine Plot, in the southeasterly portion of the larger tract. The plot plan was accompanied by a declaration imposing various restrictions, among them restrictions limiting the use of lots for residential purposes and authorizing only the erection of a single private residence upon each lot.[1] Five years later,

1. The restriction found in the declaration specifically provided:

Esther L. Newbold, to whom title to the residue of the 60 acre tract had descended upon the death of her sister, Margaret, created an addition to the original subdivision. This First Addition, as it was called, consisted of 19 lots, all of which were subjected to the same building and use restrictions as the Irvine Plot. A Second Addition to the Irvine Plot was created in 1959. This addition contained 16 lots, including several lots from prior subdivisions, and was subjected to the same restrictions imposed upon the original subdivision lots. Both the First and Second Additions were located to the north of the original Irvine Plot.

The ten acre tract of land with which we are here concerned was conveyed by Esther L. Newbold to Sarah Swick, appellant's mother, on December 23, 1958. In addition to land not previously subdivided, this tract contained four lots and a portion of a fifth from the First Addition. It lay generally in the southwest corner of the original tract of 60 acres. The grantor imposed upon the ten acres a series of restrictions and covenants intended to run with the land. Two of them provided:

1) The premises are conveyed for residence purposes only and no structure other than ___ single private residences shall be erected, placed or permitted on the premises conveyed . . . .

. . . .

10) Only one dwelling house shall be built on each 11,250 square feet of land.

The appellant acquired title to this ten acre tract by deed, dated January 10, 1964, from his mother. That deed contained the same restrictions as the Newbold-Swick deed of 1958.

The ten acre tract, although occupying the southwest corner of the original 60 acre tract, was irregular in shape and was separated from the initial Irvine Plot by seven lots. These lots were used to create a Third Addition by Sarah

"1.  The premises are conveyed for residence purposes only and no structure other than one single private residence shall be erected, placed or permitted on the premises conveyed . . . ."

Irvine Roberts and John L. Welsh, Jr., devisees of Esther L. Newbold, who died in 1963. The lots in the Third Addition were subjected to the same building and use restrictions.

By two deeds in November, 1966 and February, 1967, Sarah Irvine Roberts and John L. Welsh, Jr. conveyed to Giles Schutte and wife a tract of land adjacent to the northern property line of appellant's ten acre tract and the western boundary of the Second Addition. The deed for this tract contained no restrictions, and Schutte caused a 64 unit apartment complex to be constructed thereon.

Meanwhile, it should also be observed that in May, 1957, a tract of land located in the northeast corner of the 60 acre tract had been conveyed free of restrictions by Esther L. Newbold to Warren Industrial Development Authority. This tract, however, was not contiguous to the several residential subdivisions created in the southern part of the larger tract. The intervening land was conveyed by Roberts and Welsh to Alexander Courts, Inc. by deed dated November 1, 1967. This land was subsequently condemned for a limited access highway which now divides the northern and southern segments of the 60 acre tract. Appellant's exhibit depicts the conveyances from and division of the 60 acre tract as follows:

Defendants' Exhibit No. 1                    149a

On May 22, 1978, John L. Welsh, Jr. and Sarah Irvine Roberts executed in favor of John M. Swick, the appellant, an agreement purporting to assign to Swick the right to enforce the building and use restrictions which had previously been imposed upon the ten acre tract. When it became apparent that appellant intended to sell a portion of his ten acre tract to the other appellant, Forest Investment Corporation, for purposes of constructing thereon an apartment complex, the appellees, all of whom own residential

lots in the Irvine Plot and the several additions thereto, commenced an action to enjoin such construction.

Appellants contend, on appeal, as they did in the court below, that the restrictive covenants cannot be enforced by appellees who, although they own property in an adjoining subdivision, were not parties to the deed by which the restrictive covenants were imposed upon the 10 acre tract in question. Appellants assert that the covenants were personal to the grantor and were extinguished by merger when the rights of enforcement were assigned to them by devisees of the grantor who had imposed the restrictions. We conclude that appellees are proper parties to enforce the restrictions.

" 'Restrictive covenants which restrict the use of property, although not favored by the law, are legally enforceable.' *Rieck v. Virginia Manor Co.*, 251 Pa.Super. 59, 63, 380 A.2d 375, 377 (1977)." *Morean v. Duca*, 287 Pa.Super. 472, 475, 430 A.2d 988, 990 (1981). " 'The right of a person not a party thereto to enforce in equity a restriction on the use of property depends on whether or not the restrictive covenant or agreement was imposed on the land owned by defendant for the benefit of the land owned by plaintiffs who are seeking to enforce the restriction .... The question is determined largely by the intention of the parties, and it must appear from the terms of the grant or from the situation of the parties and the surrounding circumstances that it was the intention of the grantor, when inserting the restriction, to create ... [an] equity ... which would inure to the benefit of complainant's land and equitably be annexed as an appurtenance.' " *Appeal of J.C. Grille, Inc.*, 181 Pa.Super. 456, 463–64, 124 A.2d 659, 664 (1956) quoting 26 C.J.S. Deeds § 167. Section 541 of the Restatement of the Law of Property, quoted approvingly and followed by the Pennsylvania Supreme Court in *Mariner v. Rohanna*, 371 Pa. 615, 617–18, 92 A.2d 219, 220 (1952), provides:

The persons initially entitled to enforce the obligation of a promise respecting the use of land are the promisee and such third persons as are also beneficiaries of the promise.

See also: P.L.E. Covenants § 21; Annot., 51 A.L.R.3d 556 (1973) (general theory behind the right to enforce restrictive covenants is that the covenants must have been made with or for the benefit of the one seeking to enforce them).

In order to establish themselves as third party beneficiaries of the restrictive covenants contained in the deed to appellant's mother, appellees point to the general scheme of development in the southern part of the 60 acre tract being pursued by the Newbold family at the time the property was deeded to appellant. In the leading case of *Korn v. Campbell,* 192 N.Y. 490, 85 N.E. 687 (1908), it was held that restrictive covenants may be enforced by other than the grantor or covenantee where they are imposed to carry out a general scheme for the development of real property. See also: *R & R Realty Co. v. Weinstein,* 4 Ariz.App. 517, 422 P.2d 148 (1966); *Hayes v. Gibbs,* 110 Utah 54, 169 P.2d 781 (1946).

The circumstances surrounding the development of the southern portion of the 60 acre tract evidenced a uniform scheme of development extending to and including the ten acre Swick parcel. The property conveyed to Sarah Swick was contiguous to, and in fact included a portion of the land contained in the Irvine Plot and the First Addition. The intention of Margaret and Esther Newbold with regard to the development of the subdivided property was clearly expressed. Only single private residential dwellings were to be constructed on the lots created thereby. Analogously worded restrictions were contained in the deed conveying the contiguous parcel to Mrs. Swick and now owned by appellant. These factors, we conclude, disclose an obvious intent by the grantor to include the ten acre parcel within the general scheme of single private residences imposed upon the entire southern portion of the 60 acre tract. That this general scheme of residential development did not include the northern portion of the tract does not defeat the clear intent of the Newbold sisters to so develop the southern portion.

Appellants argue further that an additional hearing should have been held to permit them an opportunity to

produce evidence concerning the intent of Sarah Swick, appellants' predecessor in title. This claim is without merit. The land was burdened by restrictive covenants imposed by Margaret and Esther L. Newbold. The intent of Sarah Swick, as evidenced by her acts, would not defeat the general scheme of development or the restrictions imposed by her grantor. Thus an additional hearing was unnecessary, and the court properly declined to hear such evidence.

Affirmed.