J-A25004-18

2019 PA Super 66

| | | |
|---|---|---|
| WELLS FARGO BANK N.A., SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, N.A., CARBON COUNTY, PA. F/K/A NORWEST BANK MINNESOTA, N.A., AS TRUSTEE FOR DELTA FUNDING HOME EQUITY LOAN ASSET BACKED CERTIFICATES, SERIES 1999-2, | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | No. 405 EDA 2018 |
| v. | : : : | |
| MARIA T. ZUMAR | : | |

Appeal from the Order Entered December 29, 2017
In the Court of Common Pleas of Carbon County Civil Division at No(s):
13-1664

BEFORE:  PANELLA, J., DUBOW, J., and KUNSELMAN, J.

OPINION BY DUBOW, J.:                    **FILED MARCH 05, 2019**

Appellant, Wells Fargo Bank, N.A., Successor by Merger to Wells Fargo Bank Minnesota, N.A., Carbon County, Pa. f/k/a Norwest Bank Minnesota, N.A., as Trustee for Delta Funding Home Equity Loan Asset Backed Certificates, Series 1999-2, appeals from the Order entered December 29, 2017, denying its Petition to Set Aside Sheriff's Sale.  We affirm.

In January 1989, John C. Zumar and Appellee, as husband and wife, purchased a parcel of land (Vacant Lot) located in Packer Township, Carbon County, Pennsylvania.  **See** Zumar Deed, filed and recorded March 20, 1989. The Vacant Lot sits adjacent to another parcel (House Lot) at one time owned

by the Zumars. *See* Deed to House Lot, filed and recorded August 5, 1987. Both parcels share the same street address, 538 Brenkman Drive, Weatherly, Pennsylvania.[1]

The Vacant Lot was one of seven created following the subdivision of a larger tract of land owned by the Andreuzzi family. *See* Andreuzzi Subdivision Plan, filed January 4, 1989.[2] Viewed from Brenkman Drive, this tract of land stretches behind the House Lot, as well as five other developed parcels. *Id.*

Both the Zumar Deed and the Andreuzzi Subdivision Plan set forth similar restrictions on the Vacant Lot. In relevant part, the Zumar Deed provides:

> The parcel of land conveyed herein shall become a part of the respective parcel of the Grantee herein [*i.e.*, the Zumars] and may not be conveyed separately apart therefrom without compliance with all regulations and ordinances of the Township of Packer.

Zumar Deed at 2 (unpaginated); *see also* Andreuzzi Subdivision Plan (similarly suggesting that subdivided parcels, conveyed to a respective adjacent landowner, "may not be conveyed separately or apart therefrom without prior township approval").

In June 1994, the Zumars conveyed both parcels to Matthew M. McGowan and Anna Marie McGowan, as husband and wife. *See* McGowan

---

[1] Documents in the record of this matter identify the street as either "Brenkman" or "Breakman."

[2] The members of the Andreuzzi family were Joseph A. Andreuzzi, Anella A. Andreuzzi, Judith Ann Arnoldi, and Joseph Andreuzzi, Jr.

Deed, filed and recorded August 9, 1994. The McGowan Deed provides that the conveyance is subject "to all exceptions, restrictions and reservations as shown in the chain of title." *Id.* at 3 (unpaginated). In April 1999, the McGowans conveyed both parcels to Appellee. *See* Appellee's Deed, filed and recorded on April 21, 1999. As with the McGowan Deed, Appellee's Deed provides that the conveyance is subject "to all exceptions, restrictions and reservations as shown in the chain of title." *Id.* at 3.

Appellee financed the conveyance with a loan secured by a mortgage. *See* Appellee's Mortgage, 4/13/99. However, the legal description of real property encumbered by the Mortgage describes **only** the Vacant Lot. *Id.* at 13 (unpaginated).

In December 2001, the trial court entered a default Judgment of Foreclosure on the Mortgage. *See* Trial Court Mem. Op., filed December 29, 2017, at 6 n.6. In December 2006, execution proceedings ended in a Sheriff's sale at which Bank One—a predecessor-in-interest to Appellant—purchased the Vacant Lot. *Id.* Thereafter, in April 2010, upon Petition by Bank One, the court vacated the prior Judgment without prejudice and set aside the Sheriff's sale. *Id.* In October 2010, the court granted Bank One's Motion to Reform Appellee's Mortgage to include an accurate description of the real property encumbered, including both the Vacant Lot and House Lot. *Id.* at 2.

In August 2013, Appellant filed a Complaint seeking a Judgment of Foreclosure. Despite the prior Order reforming Appellee's Mortgage, the Complaint's description of real property encumbered by the Mortgage again

- 3 -

referenced **only** the Vacant Lot. *See* Complaint, 8/21/13. In December 2013, the court entered a default Judgment against Appellee. *See* Notice of Judgment, 12/13/13. In February 2014, execution proceedings ended in a Sheriff's sale at which Appellant purchased the Vacant Lot. *See* Sheriff's Deed-Poll, filed and recorded March 28, 2014.[3]

In December 2016, having discovered its error, Appellant filed a Petition to Set Aside Sheriff's Sale. *See* Petition, 12/27/16. Referencing the restriction set forth in the Zumar Deed, Appellant averred that the Sheriff was without authority to sell the Vacant Lot separately from the House Lot. *Id.* at 4 (unpaginated). Appellee responded to the Petition, asserting that it was untimely filed and, further, that the restriction set forth in the Zumar Deed was unenforceable as a perpetual restraint on alienation. *See* Appellee's Answer, 1/25/17.

In August 2017, the court held a hearing in this matter. Appellant introduced testimony from James Markovchick, a neighbor who also owned two adjacent parcels, one of which was formed pursuant to the Andreuzzi Subdivision Plan. *See* Notes of Testimony (N.T. Hearing), 8/22/17, at 74-90.

---

[3] Thereafter, Appellant purportedly conveyed both parcels to an unrelated party, Luis Diaz. *See* Trial Court Mem. Op. at 5-6. Mr. Diaz has consented to the current proceedings. *See* Diaz Consent, 12/27/16.

Mr. Markovchic testified to a similar deed restriction on his property that nominally precluded separate conveyance of his adjacent parcels. *Id.* at 86.[4]

In December 2017, the trial court denied Appellant's Petition. *See* Order, 12/29/17. The court also issued a memorandum opinion, explaining its decision. *See* Trial Court Mem. Op. at 6-10 (concluding (1) Appellant's Petition untimely; (2) Zumar Deed restriction unenforceable as restraint on alienability; and, thus, (3) Sheriff was authorized to convey Vacant Lot). Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. In response, the court entered a statement pursuant to Pa.R.A.P. 1925(a), directing our attention to its prior opinion.

Appellant presents the following issues for our review:

1. [Whether] the court abuse[d] its discretion or commit[ted] an error of law when it found that the Sheriff had authority to sell the property at foreclosure sale when there is contained a restrictive covenant preventing the two lots at issue being sold separately[;]

2. [Whether] the trial court err[ed] when it determined the validity of the restrictive covenant in the context of a foreclosure action[; and]

_____

[4] Appellant also introduced testimony from Daniel Miscavige, Esq., who has served as the Solicitor for Packer Township since the Andreuzzi Subdivision. *See* N.T. Hearing at 30-31. Attorney Miscavige suggested that, absent a variance, any "independent structure" erected on the Vacant Lot would not comply with a local zoning regulation passed in 1989. *Id.* at 67-69; *see also* Stipulation of Facts, 8/21/2017, at 2 ¶ 6 (quoting Packer Township Zoning Regulation Article 502.6(A) as requiring "[e]ach principal building or use shall be located upon a lot having a minimum lot area of not less than two (2) acres"). Appellant pursues no claim based upon this evidence. *See generally* Appellant's Br.; *see also* Trial Court Mem. Op. at 8 n.7 (ascribing no significance to this regulation as it effects use not alienability).

3. [Whether] the trial court err[ed] when it held that due to the procedural posture of the matter, equity could not be invoked by Appellant[.]

Appellant's Br. at 2.

"A petition to set aside a sheriff's sale is grounded in equitable principles[.]" *GMAC Mortg. Corp. of Pa. v. Buchanan*, 929 A.2d 1164, 1167 (Pa. Super. 2007). The burden of establishing grounds for relief rests with the petitioner. *Id.*

Generally, a court may only grant a petition "when [it] is filed before the sheriff's delivery of the deed." *Mortg. Elec. Registration Sys., Inc. v. Ralich*, 982 A.2d 77, 79 (Pa. Super. 2009) (citations omitted) (*Ralich*), *appeal denied*, 992 A.2d 889 (Pa. 2010); Pa.R.C.P. 3132. However, a petitioner may invoke the equitable powers of the court upon establishing an exception to this time bar for "fraud or a lack of authority to make the sale." *Ralich*, 982 A.2d at 80. This restraint on the court's equitable powers is well settled. *See Knox v. Noggle*, 196 A. 18, 19 (Pa. 1938) (citing *Case of McCulloch*, 1 Yeates 40 (Pa. 1791)). As noted by our Supreme Court, "[a] weakening of the rule . . . would seriously impair the stability of titles acquired through sheriff's sales." *Knox*, *supra* at 19.

The decision to set aside a sheriff's sale is within the sound discretion of the trial court, and we shall not reverse its decision on appeal absent a clear abuse of discretion. *Merrill Lynch Mortg. Capital v. Steele*, 859 A.2d 788, 791 (Pa. Super. 2004) (*Steele*). "An abuse of discretion is not merely an

error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or [the judgment is] the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused." **National Penn Bank v. Shaffer**, 672 A.2d 326, 328 (Pa. Super. 1996) (citation omitted).

Appellant, having sought relief more than two years after delivery of the Sheriff's Deed-Poll, acknowledges that its Petition was untimely. **See** Appellant's Br. at 16; **see also Ralich**, 982 A.2d at 79; Pa.R.C.P. 3132. Thus, it purports to invoke the trial court's equitable powers by exception. **See Ralich**, 982 A.2d at 80.

Before we address those issues properly preserved by Appellant, we note that its Brief does not conform to the Pennsylvania Rules of Appellate Procedure. For example, Rule 2119(a) provides that an "argument shall be divided into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a). While Appellant presents three issues for our review, its argument is divided into four distinct parts. **Compare** Appellant's Br. at 2, **with** Appellant's Br. at 16, 18, 26, 27. This has hampered our review.

Additionally, in the third part of its argument, Appellant asserts that it was procedurally improper for the trial court to address the validity of the Zumar Deed restriction *sua sponte*. **Id.** at 26. In our view, this argument is not "fairly suggested" by the issues preserved for appeal. **See** Pa.R.A.P. 1925(b)(4), 2116(a). Moreover, following our review of the record, it is clear

- 7 -

that Appellant has not challenged previously the court's authority to make this determination.  ***See generally*** N.T. at 92-110 (addressing issues for court's consideration); ***see also*** Appellant's Pa.R.A.P. 1925(b) Statement, 2/8/18, at 2-3 (asserting several substantive errors but failing to suggest that the court erred by *sua sponte* addressing validity of restrictive covenant).  Accordingly, we deem this issue waived.  ***See, e.g.***, ***Krebs v. United Ref. Co. of Pa.***, 893 A.2d 776, 797 (Pa. Super. 2006) (finding waiver where appellant failed to preserve issue pursuant to Pa.R.A.P. 1925(b), 2116(a)); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

We note further that the premise of Appellant's argument—that the trial court raised this issue *sua sponte*—does not accurately reflect the proceedings below.  The basis for relief set forth in Appellant's Petition was that the Zumar Deed restriction "deprived the Sheriff of the authority to sell [the Vacant Lot] separately from the [House Lot]."  Appellant's Petition at 4 (unpaginated) ¶ 22; ***see also*** N.T. at 93 (Appellant's Counsel: "The first argument being made by [Appellant] relies upon the restrictive covenant.").  Appellant raised the validity of this restrictive covenant, not the court.

Essentially, Appellant has preserved two issues for our review.[5]  In the first, Appellant contends that the Sheriff lacked authority to sell the Vacant Lot because the sale violated a valid restrictive covenant.  Appellant's Br. at 15, 16-18.  Having thus invoked the equitable powers of the court, in its second issue, Appellant asserts that "procedural errors" committed in prior attempts to foreclose on Appellee's Mortgage should not undermine its prayer for relief.  *Id.* at 27-30 (suggesting further that we balance the grave injury to Mr. Diaz, who purchased the Vacant Lot, against the windfall afforded Appellee, *i.e.*, a free house).  Appellant's first issue is dispositive.

The foundation of Appellant's argument is its assertion that the Zumar Deed restriction prescribes a reasonable and enforceable restraint on the separate conveyance of the Vacant Lot.  *Id.* at 18, 20-25.

A restraint on the free alienation of property is not favored in the law. ***Lauderbaugh v. Williams***, 186 A.2d 39, 41 (Pa. 1962).  While a "limited and reasonable restraint" may be valid, "an absolute restraint is against public policy and, therefore, of no legal effect."  ***Id.***  Whether a restraint is reasonable presents a question of law that we consider in light of the specific facts and circumstances of the case, "including any time limit on the restraint." ***Ralston v. Ralston***, 55 A.3d 736, 740 (Pa. Super. 2012); ***see also, e.g.***,

---

[5] We merge the first and second issues raised by Appellant and address them concurrently.

*Hyatt v. Hyatt*, 417 A.2d 726, 729 (Pa. Super. 1979) (holding that agreement to suspend partition action indefinitely constituted an unlawful restraint on alienation); *Lauderbaugh*, 186 A.2d at 41 (noting that right of alienation preconditioned upon admittance to local association was "not limited in time and purports to be a perpetual one, a fact which militates strongly against its enforcement").

In the Zumar Deed, we discern two restraints on an owner's right to convey the Vacant Lot: (1) conveyance of the Vacant Lot is permitted **if** the Vacant Lot is sold along with the House Lot; and (2) **separate** conveyance of the Vacant Lot is permitted **if** there is compliance with all local regulations and ordinances. Zumar Deed at 2 (unpaginated). Thus, we must determine whether these restraints are "limited and reasonable." *Lauderbaugh*, 186 A.2d at 41.

According to Appellant, the first restraint does not "prevent absolutely the transfer of property . . . but only prevents the lots [from being] sold separately." Appellant's Br. at 21. In support of its assertion that this limited restraint is reasonable, Appellant directs our attention to the Andreuzzi Subdivision Plan. According to Appellant, the purpose of the Plan was to increase the value of current homeowners' property by ensuring that their respective homes would front undeveloped open space, a "general scheme" beneficial to the neighborhood. Appellant's Br. at 21-23 (citing in support *Fey v. Swick*, 454 A.2d 551, 554 (Pa. Super. 1982)).

- 10 -

Notably absent from Appellant's analysis is any discussion of the perpetual nature of this restraint. ***See*** Appellant's Br. at 20-25. By its plain terms, however, the restraint prohibits the conveyance of a distinct parcel of real property indefinitely.[6] ***See*** Zumar Deed at 2 (unpaginated). Thus, we reject Appellant's characterization of this restraint as limited. ***See Hyatt***, 417 A.2d at 729; ***Lauderbaugh***, 186 A.2d at 41.

Further, Appellant's reliance on ***Fey*** is misplaced. In that case, residential lot owners brought a class action seeking to enjoin construction of an apartment complex on an adjacent subdivision. ***Fey***, 454 A.2d at 551-53. The various lots and subdivisions involved originated from a common grantor, and near-identical restrictive covenants limited their use. ***Id.*** The trial court enjoined construction, and this Court affirmed. ***Id.*** at 551. On appeal, our analysis considered whether the residential lot owners had established themselves as third party beneficiaries of the covenants restricting use of the adjacent subdivision. ***Id.*** at 554. We concluded they did so based on the "general scheme of residential development." ***Id.***

---

[6] There is no evidence that a merger or consolidation of the Vacant Lot and the House Lot occurred. Rather, the documentary evidence suggests otherwise. ***See*** Zumar Deed (evincing an intent that the Vacant Lot "become a part of" the House Lot); ***but see*** McGowan Deed (describing two distinct parcels); Appellee's Deed (same). Indeed, the genesis of Appellant's Petition suggests a tacit acknowledgment of this, as its Complaint in foreclosure provided an incomplete description of real property encumbered by the Mortgage, describing **only one of the two parcels**.

The validity of the restrictive covenants was not at issue in **Fey**, as it is here. Moreover, the **Fey** covenants restricted the size and the manner in which subdivided parcels could be used. **Id.** at 551-553 (limiting lots to a single, private residence). They did not restrict an owner's authority to convey property to another. **Id.** Thus, we deem **Fey** inapposite.[7]

Appellant does not address the second restraint, *i.e.*, separate conveyance of the Vacant Lot is permitted provided an owner complies with all local regulations and ordinances, nor has Appellant averred the relevance of any local regulation or ordinance. **See generally** Appellant's Br.; Appellant's Petition. Thus, we need not consider the restraint in detail. As noted by the trial court, a township's regulations and ordinances address the use, and not the conveyance, of real property. **See** Trial Court Mem. Op. at 8 (characterizing this condition for separate conveyance as "illusory"). We agree and, therefore, attribute no significance to this language. **See Ralston**, 55 A.3d at 740.

For these reasons, the restraints on alienation set forth in the Zumar Deed are neither limited nor reasonable. The first imposes a perpetual restraint on an owner's right to convey property, whereas the second offers

---

[7] Similarly misplaced is Appellant's reliance on **Estate of Hoffman v. Gould**, 714 A.2d 1071 (Pa. Super. 1998) (holding that a restrictive covenant, which required prior approval by developer of building plans, was valid and enforceable). **See** Appellant's Br. at 20.

no meaningful limitation on that right. Thus, they are unenforceable. *Ralston*, 55 A.3d at 740; *Lauderbaugh*, 186 A.2d at 41.[8]

As the Zumar Deed restriction seeks to impose restraints that are unenforceable, the restriction did not undermine the Sheriff's authority to convey the Vacant Lot separately from the House Lot. Accordingly, Appellant failed to invoke the equitable powers of the trial court. *Ralich*, 982 A.2d at 80. Further, as such, we need not address the equitable arguments untimely raised by Appellant in its second issue. *Id.* For these reasons, we discern no abuse in the court's discretion to deny Appellant's Petition to Set Aside Sheriff's Sale. *Steele*, 859 A.2d at 791.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/5/19

---

[8] Similarly, the restraint contemplated by the Andreuzzi Subdivision Plan is unenforceable.