J-S41044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ALISHA M. SPOSATO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY SPOSATO, II | : | No. 1573 EDA 2025 |

Appeal from the Order Entered May 20, 2025
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2020-003763

BEFORE:   BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JANUARY 5, 2026**

Alisha M. Sposato[1] ("Mother") appeals the contempt order, entered in the Court of Common Pleas of Delaware County, on the petition of Anthony Sposato, II ("Father") based on violations of the court's final custody order for Mother's and Father's three shared biological children ("Children").  Mother challenges, among other things, the court's jurisdiction to enter the contempt order, especially where the contempt order requires:  (1) Mother's mother ("MGM") to refrain from unsupervised/private contact with Children for ninety days[2]; (2) forward-looking holiday/makeup awards and additional therapy

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother's name also appears in the record as "Alicia Angelozzi Sposato."

[2] We recognize that, at this juncture, the ninety-day provision of the contempt order has since expired.  Nevertheless, we do not find this issue is moot, both
*(Footnote Continued Next Page)*

logistics; and (3) Mother to pay a purportedly mislabeled $750.00 "fine" to Father's attorney. After consideration, we affirm and remand for the trial court to determine appropriate appellate attorneys' fees to be paid by Mother to Father because Mother has filed a frivolous and vexatious appeal, which is an abuse of the appellate process.

The court set forth the facts of this case as follows:

> On May 15, 2025, following an off[-]the[-]record conference with counsel and a full hearing ("the Hearing")[, Mother] was found in willful contempt of the final custody order dated December 17, 2024 ("Final Custody Order") and the prior custody orders referenced therein. All parties were present and represented by counsel at the Hearing. On May [20], 2025[,] the [trial court] issued a detailed order ("Contempt Order") enforcing and clarifying the Final Custody Order. [Mother] was sanctioned $750.00, the Final Custody Order was clarified, and the parties were warned to strictly comply with the Final Custody Order going forward. The [court] enforced the Final Custody Order to promote future compliance and to achieve the goals of the Final Custody Order.

Trial Court Opinion, 8/19/25, at 1 (footnotes and unnecessary capitalization and punctuation omitted).

---

because no party has raised mootness and because a court's imposition of a ninety-day ban is capable of repetition without review. ***See Rendell v. Pennsylvania State Ethics Comm'n***, 983 A.2d 708, 717 (Pa. 2009) (explaining that standing, ripeness, and mootness may not be raised by Pennsylvania courts *sua sponte*); ***see id.*** at 719 (noting existence of exception to mootness doctrine for issues capable of repetition yet evading review).

Mother filed a timely counseled appeal, and she and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.[3] **See** Pa.R.A.P. 1925(a)(2)(i). On appeal, Mother presents the following issues for our consideration:

1. Whether the trial court exceed[ed] its limited authority when it added new, substantive restrictions—including a 90-day third-party contact ban [against MGM] and other add-ons—while the [] Final Custody Order was on appeal at 189 EDA 2025?[4]

2. Whether the court err[ed] by assessing a $750 "fine" payable to Father's counsel where 23 Pa.C.S. § 5323(g) caps fines at

---

[3] Mother purports to appeal from the Contempt Order, which she states was entered May 19, 2025, in her notice of appeal. However, we note that the Contempt Order was not entered in the trial court docket pursuant to Pennsylvania Rule of Civil Procedure 236(b) until May 20, 2025. **See** Pa.R.Civ.P. 236(b); **see also In re L.M.**, 923 A.2d 505, 509 (Pa. Super. 2007) (30-day appeal period is not triggered until clerk makes notation on docket that notice of entry of order has been given). Moreover, we observe that the thirtieth day for Mother to appeal the Contempt Order fell on Juneteenth, a legal holiday; thus, Mother's appeal filed June 20, 2025, was timely filed. **See** 1 Pa.C.S. § 1908 (excluding from computation of time, *inter alia*, legal holidays that fall on last day of relevant period). We have amended the caption accordingly.

Further, we recognize that the Contempt Order, which, *inter alia*, finds Mother in contempt and awards sanctions, as well as orders such sanctions in the form of counsel fees, is properly appealable. **See Genovese v. Genovese**, 550 A.2d 1021, 1022 (Pa. Super. 1988) (contempt order is final and appealable when it contains present finding of contempt and imposes sanctions); **see also Rhoades v. Pryce**, 874 A.2d 148, 151 (Pa. Super. 2005) (*en banc*) (award of counsel fees is sufficient sanction to render order appealable).

[4] This Court affirmed the Final Custody Order in a fifty-one page decision on October 10, 2025. **See Sposato v. Sposato**, 2025 LX 498258 (Pa. Super., filed October 10, 2025) (189 EDA 2025) (unpublished memorandum decision).

- 3 -

$500 and separately governs counsel fees, and by imposing a contempt penalty against a nonparty grandmother?

3. Even apart from [Pennsylvania Rule of Appellate Procedure] 1701, whether the court lacked authority to impose a 90-day ban on [MGM]'s unsupervised/private contact based on a brief courtroom comment—without a contempt adjudication [for MGM], without a purge mechanism, and without best-interest findings for a third-party restriction?

4. Was the civil[ ]contempt finding and sanction improper where the record shows [Mother]'s substantial compliance or inability to comply, and where the sanction was punitive rather than coercive (non-purgeable), [and] contrary to **Brocker**/**Lachat**?[5]

Mother's Brief, at 14 (suggested answers and citations omitted).

Prior to reaching the merits of the issues in Mother's appellate brief, we observe that Mother's claims numbered 2 through 4, above, are not raised in her Rule 1925(a)(2)(i) concise statement of errors complained of on appeal, or fairly suggested thereby. Therefore, those claims are waived. **See In the Interest of: G.D. v. D.D.**, 61 A.3d 1031, 1036 n.3 (Pa. Super. 2013) (finding appellate claims waived where raised in appellate brief but not raised in concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i)).

Moreover, Mother fails to identify where in the record she has preserved each of her issues raised on appeal, in violation of the appellate rules, which deficiency materially hinders our review of her last three issues raised in her brief. **See Krauss v. Trane U.S. Inc.**, 104 A.3d 556, 584 (Pa. Super. 2014)

---

[5] **See Brocker v. Brocker**, 241 A.2d 336 (Pa. 1968); **see also Lachat v. Hinchliffe**, 769 A.2d 481 (Pa. Super. 2001).

(waiver is appropriate when "deficiencies in a brief hinder our ability to conduct meaningful appellate review"); ***see also*** Pa.R.A.P. 2101 (explaining that, if defects in appellate brief are substantial, appeal may be dismissed); Pa.R.A.P. 2119(e) (requiring, in immediate connection with argument portion of appellate brief, specific cross-reference to relevant pages of statement of case which set forth information as required by Pa.R.A.P. 2117(c), or substantially same). Also, Mother must establish that her issues are preserved in the trial court. ***See*** Pa.R.A.P. 302(a) (issues must be raised in first instance in trial court or are deemed waived); ***Wells Fargo Bank N.A. v. Zumar***, 205 A.3d 1241, 1245 (Pa. Super. 2019) (issue waived because argument not fairly suggested by issues preserved for appeal); ***Foulk v. Foulk***, 789 A.2d 254, 259 (Pa. Super. 2001) (*en banc*) (finding issue waived where not raised during contempt proceedings in trial court); ***In re T.P.***, 78 A.3d 1166, 1171 (Pa. Super. 2013) (explaining several purposes in requiring parties to raise issues in trial court in first instance).

Indeed, different from the claims she raises in her brief, Mother's Rule 1925 concise statement of errors that she filed in the trial court frames her issues for appeal as follows:

1. The trial court erred in entering the [] Contempt Order because it lacked subject matter jurisdiction to proceed in the matter under [Rule] 1701(a) while a timely appeal from the [] Final Custody Order was pending before the Superior Court[.] ***See Commonwealth v. Caufman***, 662 A.2d. 1050, 1052 (Pa. 1995)[.]

2. The trial court erred by conducting contempt proceedings and issuing the [] Contempt Order, as such actions constitute

- 5 -

enforcement of a judgment and are within the ambit of [Rule] 1701, thereby divesting the trial court of jurisdiction. ***See G.B. v. M.M.B.***, 670 A.2d 714, 720 (Pa. Super. [] 1996) [(*en banc*)].

3. The trial court erred by entering the [] Contempt Order, which substantively altered that custody schedule, imposed monetary sanctions, restricted third-party contact, and mandated therapy logistics, none of which fall within the permissible exceptions to Rule 1701(a). ***See J.A.*** 107 A.3d 799, 811 (Pa. Super[.] 2015)[.]

4. The trial court's [] Contempt Order is void *ab* [*initio*] because it was entered without subject matter jurisdiction[, and] orders entered without jurisdiction are nullities. ***See Criss v. Wise***, 781 A.2d 1156, 1160 (Pa. 2001).

Mother's Pa.R.A.P. 1925(a)(2)(i) Concise Statement of Errors Complained of on Appeal, 6/20/25 (unnecessary capitalization omitted).

In other words, each of Mother's claims in her Rule 1925 concise statement challenges the court's jurisdiction to enter the Contempt Order. Nevertheless, Mother now only raises related claims in only her first appellate argument. Accordingly, Mother's only preserved claim on appeal is the first issue she raises in her appellate brief relating to jurisdiction. ***See Zumar***, 205 A.3d at 1245. In any event, we observe that issues of jurisdiction may be addressed by this Court *sua sponte*, and at any time, including for the first time on appeal, because challenges to the court's jurisdiction are nonwaivable. ***See In re Adoption of K.M.G.***, 219 A.3d 662, 668 (Pa. Super. 2019) (*en banc*) (noting foundational precept that court may raise jurisdictional issues *sua sponte*); ***see also Strasburg Scooters, LLC v. Strasburg R.R.***, 210 A.3d 1064, 1067 (Pa. Super. 2019) (noting issues of jurisdiction may be raised

at any time). Therefore, we proceed to review the merits of Mother's preserved and nonwaivable issues.

As to Mother's jurisdictional claims, Mother argues that, at the time the court entered the Contempt Order, the court was divested of jurisdiction under Rule 1701(a) because Mother had already filed a notice of appeal concerning the Final Custody Order, which was docketed in this Court at 189 EDA 2025. *See* Mother's Brief, at 19 (citing Pa.R.A.P. 1701(a)); *see also supra*, at fn. 4. Specifically, Mother suggests that the Contempt Order was a nullity and should be vacated because it made improper substantive modifications not tethered to extant terms in the Final Custody Order, including specifically that the Contempt Order: (1) restricts MGM from unsupervised/private contact with the Children for ninety days without a purge mechanism; (2) implements forward-looking holiday/makeup awards and additional therapy logistics; and (3) orders Mother to pay a mislabeled $750 "fine" to Father's counsel. *Id.* at 19-20. Mother argues that none of these three provisions enforced pre-existing paragraphs in the Final Custody Order and were thus outside the court's power to order. *See id.* at 20.

Further, Mother contends that the court was on constructive notice that Mother relies on MGM for transportation and care for the Children, especially considering known scheduling conflicts. *See* Mother's Brief, at 22. Mother argues that MGM's contact ban, which effectively changed who may provide transportation and day-to-day caregiving assistance for Children, was not proper enforcement of the Final Custody Order and did not preserve the status

quo—but impermissibly substantively altered it—and the court lacked jurisdiction to order it. *See id.* at 21-22. Moreover, in making her argument, Mother relies on this Court's decision in ***S.C.B. v. J.S.B.***, 218 A.3d 905 (Pa. Super. 2019), and on 23 Pa.C.S. § 5328(a), for the proposition that the court, procedurally, failed to consider contemporaneous best-interest factors. ***See*** Mother's Brief, at 20, 23. We find Mother is not entitled to relief.

Prior to reaching the merits of Mother's claims, we conclude that Mother waived her non-jurisdictional arguments regarding specifically: (1) that the court ordered Mother to pay an allegedly mislabeled fine in excess of statutory authority[6], (2) ***S.C.B.***[7], (3) Section 5328(a), (4) and lack of purge mechanisms, because Mother has not raised any of these four arguments in the trial court in the first instance and they do not relate to the court's

---

[6] In her appellate brief, in addition to her jurisdictional claim regarding the fine, Mother complains that the Contempt Order wrongly required it be payable to Father's counsel rather than to the court and that it exceeds the $500 statutory cap. ***See*** Mother's Brief, at 25. Nevertheless, these claims are waived because they are raised for the first time on appeal and are neither jurisdictional nor fairly suggested by the claims Mother raised in her Rule 1925 concise statement. ***See Zumar***, 205 A.3d at 1245; ***see also Foulk***, 789 A.2d a 259; ***T.P.***, 78 A.3d at 1171; Pa.R.A.P. 302(a). Nevertheless, we address Mother's claim that the court was without jurisdiction to impose the $750 fine payable to Father's counsel. ***See Strasburg Scooters, LLC***, 210 A.3d at 1067.

[7] Even if not waived, Mother's reliance on ***S.C.B.*** is misplaced as that case is an appeal from a custody determination rather than from a contempt order. In any event, in ***S.C.B.***, this Court found that the trial court **possessed** jurisdiction, pursuant to Rule 1701(b)(2), to appoint a guardian *ad litem* ("GAL") and to set forth the mother's obligation to pay a certain share of the GAL's fees in that case. ***See S.C.B.***, 218 A.3d at 913.

jurisdiction. *See* Pa.R.A.P. 302(a); *see also Foulk*, 789 A.2d at 259; *T.P.*, 78 A.3d at 1171.

Moreover, Mother does not identify the location in the record where these claims are preserved. *See* Pa.R.A.P. 2119(e); *see also* Pa.R.A.P. 2101.; Pa.R.A.P. 302(a). Accordingly, on the merits, we proceed to review Mother's lone preserved and nonwaivable contention on appeal—that the court was deprived of jurisdiction to enter the Contempt Order under Rule 1701(a), because the Contempt Order allegedly substantively altered the Final Custody Order by: (1) restricting MGM's contact with the Children; (2) implementing holiday and therapy logistics; and (3) ordering Mother pay a fine to Father's counsel—none of which, allegedly, fall within the permissible exceptions to Rule 1701(a). We find Mother is not entitled to relief.

"Jurisdiction is purely a question of law; the appellate standard of review is *de novo* and the scope of review plenary." *Interest of J.M.*, 219 A.3d 645, 650 (Pa. Super. 2019) (citation omitted).

As to a court's jurisdiction to act on an order after an appeal is taken, "[g]enerally, a trial court may not proceed further in a case once a party appeals." *S.C.B.*, 218 A.3d at 913; *see also* Pa.R.A.P. 1701(a). However, certain exceptions apply including exceptions for entering orders that preserve the status quo, make corrections, or order other permitted actions. *See* Pa.R.A.P. 1701(b)(1). Similarly, the trial court retains jurisdiction to, *inter alia*, enforce the relevant appealed-from order(s) pursuant to Rule

1701(b)(2), unless such order is superseded. *See S.C.B.*, 218 A.3d at 913; *see also* Pa.R.A.P. 1701(b)(2).

Moreover, the Child Custody Act provides that a court may impose an award of "counsel fees and costs" after finding a party in contempt of a custody order. 23 Pa.C.S. § 5323(g)(1)(v). Additionally, the Child Custody Act states that "a court may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive[,] or in bad faith." 23 Pa.C.S. § 5339. Trial courts are not required to consider a contemnor's ability to pay before imposing a sanction of attorneys' fees. *See Hopkins v. Byes*, 954 A.2d 654, 659 (Pa. Super. 2008); *see also Rhoades*, 874 A.2d at 151-52 (noting attorneys' fees may be awarded as sanction to compensate contemnor's adversary for injuries resulting from contemnor's noncompliance with court order and to compel obedience therewith); *Holler v. Smith*, 928 A.2d 330, 332 (Pa. Super. 2007) (affirming award of counsel fees as sanction for dilatory, vexatious, and obdurate behavior).

Instantly, the trial court explained its decision to issue the Contempt Order, as follows:

> This case has been contentious and extensively litigated. Mother accused Father of abusing the Children. Father accused Mother of parental alienation. Counseling was ordered on multiple occasions from multiple counselors. Multiple contempt petitions were filed, and a custody evaluation was ordered. A [GAL] was appointed. Significant animosity existed between the parties that has had a significant negative impact on the Children. All Mother's allegations of abuse by Father had been determined to be unfounded or not credible.

- 10 -

The Honorable Judge Stephanie Klein held an eight-day custody trial. On December 17, 2024, after considering all the evidence presented, including the testimony of the parties and multiple experts, Judge Klein issued a sixty-eight-page written findings of fact and conclusions of law in support of [the] Final Custody Order ("Findings")[,] and [the] eleven-page Final Custody Order. [. . .] Judge Klein awarded the parties shared legal custody, awarded Mother primary physical custody, and awarded Father escalating partial physical custody.

Father and the youngest [of the] Children were to enroll in counseling, with a designated counselor. Counseling was to be a priority and was to be scheduled within fourteen days and to commence within thirty days. Father's partial physical custody was to increase over time with the benefit of counseling. Judge Klein ruled:

> the two younger children require mental health treatment prior to Father's ability to exercise his physical custody. Their mental health difficulties, as described in the court's [Findings], are attributable to the parties' long marital and custody dispute **as well as Mother's alienating behaviors.**

Mother's alienating behaviors and the resulting negative consequences to the Children were noted and documented by several of the experts who testified at the custody trial. The [GAL] noted in her report "[]there is universal agreement among clinicians involved in this case that Mother has engaged in severe parental alienation that has caused and continues to cause serious harm to the children." The custody evaluator, [Constance] Mesiarik, PhD, stated "it is my opinion that the Children [] have been influenced by their Mother in their relationship with their Father. Whether intentional or not, Mother's behavior[s] have fueled these Children's disrespect and anger towards their Father." The court[-]appointed reunification counselor stated [that] Mother and her family have actively sabotaged the reunification process.

Counseling was ordered to address the alienation and help Father rebuild his relationship with the Children. Judge Klein required the parties to secure counseling for the youngest two Children [. . .] within fourteen days of the date of [entry in the docket of] the Final Custody Order. [One of the Children] was ordered to enter counseling with Michelle Martin. [That child's] first counseling

session with Ms. Martin was to occur within thirty days of the date of [entry in the docket of] the order. The parties were also ordered to secure counseling for [the eldest child] with a counselor recommended by Michelle Martin. Each counselor was to be provided copies of the Findings, the Final Custody Order, and the Custody Evaluation before commencing counseling with each child. The Children's counseling was to be a priority and was to help with the escalation of Father's physical custody. The Children's counseling appointments were "to take precedence over all extracurricular activities. If they cannot be scheduled after school, they shall be scheduled during the school day." Both parents were to fully cooperate with the counseling and follow any recommendations from the counselor. The [C]hildren were to remain in counseling until discharged by the counselor or by written agreement of the parties. When the parties appeared for the Hearing on May 15, 2025, approximately five months after the entry of the Final Custody Order, counseling for the [C]hildren had not commenced and had not even been scheduled.

Judge Klein anticipated that compliance with the Final Custody Order might be an issue. Judge Klein ordered Mother to "facilitate" Father's periods of physical custody. Judge Klein ordered Mother to ensure that each Child went with Father as scheduled. Judge Klein expressly stated in the Final Custody Order that "any finding of a willful violation of any provision of this Final Custody Order shall be subject to this Court's contempt powers pursuant to [Section] 5323(g)." In addition, Judge Klein ordered that if any child fails to go with or enter Father's vehicle to go with Father as scheduled, "that child shall be precluded from participating in any extra-curricular or social activities [] including but not limited to any hockey matches, practices, baseball, dance, or activity with friends. At the time of the Hearing, approximately five months after the entry of the Final Custody Order, the Children had still not gone with Father for his periods of partial custody. Father was also not getting telephone or digital [communication] access to the Children.

[After Father filed the contempt petition, the court presided over the Hearing and] found Mother in willful contempt of the Final Custody Order and sanctioned Mother $750.00. The [court] specifically found [Mother] in contempt for:

> Mother failed to bring the Children to scheduled custody exchanges, failed to "facilitate" the scheduled custody

- 12 -

exchanges, and failed "to ensure" that the child or Children would go with Father as ordered.

Mother failed to schedule therapy or counseling for the Children within 30 days of the date of [entry in the docket of] the Final Custody Order.

For over four months, Mother failed to take reasonable steps to schedule therapy for any of the Children with any mental health professional.

Mother failed to take reasonable steps to facilitate or ensure Father's periods of partial physical custody.

Mother denied or failed to facilitate Father having contact with the Children over the 2024 Christmas holiday.

Mother regularly blocked or interfered with Father's ability to communicate with the Children.

Mother admitted that she did not bring the Children to the designated custody exchanges, did not facilitate Father's periods of partial physical custody, and did not schedule the court[-]ordered counseling. Mother was a consistent no[-]call[-]no[-]show for custody exchanges. Father credibly testified that when he called the Children or Mother to see if they were coming, his calls and text messages were ignored, or hung-up on. Father testified that on at least one occasion[,] Mother responded with "stop harassing" me. Mother did not deny failing to bring the Children to the designated exchanges, she, however, tried to excuse her noncompliance by blaming the Children. Mother claimed [that one child] refused to get in the car. [Mother]'s testimony at the Hearing was self-serving, and not credible.[8] Mother claimed there was nothing she could do to get [that child]

_____

[8] This Court has previously acknowledged the inherent difficulties in corralling teenage behavior. *See E.B. v. D.B.*, 209 A.3d 451, 468 (Pa. Super. 2019) ("It has been said that an older teenage child is like an elephant — she sleeps wherever she wants."). A contemnor's claim of "[i]mpossibility [in following a court's order] is only a defense, however, where the inability to perform is not due to the [contemnor]'s own actions." *Com. ex rel. Ermel v. Ermel*, 469 A.2d 682, 684-85 (Pa. Super. 1983) (concluding mother was in contempt of custody order because child's refusal to visit father was due to mother's failure to make child available and mother's poisoning of child's mind).

to go with [] Father as ordered. [Mother] never brought the Children to a designated exchange. [Mother] also admitted that after [another child] refused to go with Father, [Mother] did not preclude [that child] from playing hockey - an activity [Mother] described as [that child's] "only" thing. Paragraph 17 of the Final Custody Order expressly states [that] if any Child refuses to go with Father, that Child is to be precluded from [participating] in any "extracurricular activities including hockey[.]" [Mother] further admitted that she has made no efforts to "facilitate["] or encourage the Children to see or communicate with their Father as ordered since at least March of 2025.

The younger Children also did not go with Father. [Mother] did not claim or present any evidence that she tried to get the younger Children to communicate with Father or go with Father for his Friday evening periods of physical custody. [Mother] never claimed to have taken anything away [from] the younger Children for their alleged refusal to go with and communicate with Father.

[Mother] argued the younger children did not have to go with Father until they underwent counseling. [Mother] believed she was excused from complying or bringing the Children to Father because counseling had not occurred. [Mother]'s claim was not credible and inconsistent with the letter and spirit of the Final Custody Order. [Mother] failed to contact the counselor, schedule counseling sessions, or take reasonable steps to schedule the counseling as ordered. [Mother] should not be able to use her violation of one provision of an order as a defense to her violation of another provision of the same order. The [court suspected] that [Mother] deliberately did not [pursue] or reasonably follow up on scheduling counseling in order to "stunt" or delay Father's progression on the graduated[-]custody schedule as well as Father's re-unification with the Children. If counseling had commenced as scheduled, Father would be further along on the graduated[-]custody schedule and with his relationship with the Children[.]

Counseling for the Children was not scheduled as ordered. Mother as the primary physical custodian and the party responsible for getting the Children to and from the counseling sessions should have taken the lead. Mother claimed she tried, by leaving three voice mails on the counselor's office number. Mother provided no confirming evidence [of] when she left the voice mails. Mother also did not try to schedule an appointment on the counselor's website or by email. [Mother] admitted she never scheduled an

- 14 -

appointment nor obtained a referral. [Mother] testified she stopped trying to schedule appointments for the Children in mid-January[,] when she was told that the designated counselors did not take insurance. [Mother] testified that unless the counseling was covered by insurance, she could not afford it; and she wasn't sure "how to move forward." Counseling was to have been a priority. Counseling was not conditioned on it being with a covered provider.

[Mother] admitted she never communicated the alleged coverage or any financial issue to Father, counsel, or the court. [Mother] never proposed an alternative counselor. [Mother, *pro se*,] nor her counsel[,] ever asked the court or Father's counsel about using another counselor who would accept the applicable insurance. The [trial court] found that "Mother had absolutely no justification" for her lack of follow[-]up [in] scheduling counseling. Rather than "facilitating[,]" [Mother] looked for any excuse not to schedule counseling, and/or to not bring the Children to Father as scheduled. The [trial court] found [Mother] in contempt and issued the Contempt Order to "change the conduct of Mother and the Children[,"] to achieve the goals of Judge Klein's [Final Custody O]rder, and to communicate "there will be consequences" for not following orders.

In addition to sanctioning [Mother], the [trial court] tried to promote future compliance, by clarifying the parts of the Final Custody Order that [Mother] allegedly found confusing. [. . .]

\* \* \*

Third, [Mother] claimed she was confused how long she was supposed to preclude the Children from activities if they refused to go with Father. In order to alleviate any confusion, the undersigned clarified the Children are to be precluded from activities until the Children reasonably comply.

Fourth[,] as a partial sanction for [Mother]'s non-compliance, [] the [trial court] gave Father partial physical custody of all three Children on Father's Day, (June 16, 2025), July 4, 2025, and Labor Day. The [trial court] specifically authorized Father to take the Children to his family's home in Cape May, New Jersey. This partial sanction is essentially make-up time and consistent with paragraph 31 A (gg) of the Final Custody Order, that expressly permitted Father to take the Children to the paternal grandparent's home in Cape May, New Jersey.

- 15 -

* * *

The [trial court] made one minor addition to or imposed one additional restriction to the Final Custody Order. In direct response to [MGM's] contemptuous outburst at the Hearing[, the trial court] restricted [MGM "]from having any unsupervised contact or private communication with any of the Children for 90 days from the date of the [entry in the trial court docket of the Contempt O]rder." [Mother] was the designated monitor or supervisor.

As the [trial court] was setting out the general terms of its decision [at the Hearing], [MGM] stood up, disrupted the proceedings, interrupted the judge, and proclaimed:

> I'm sorry, I think I can't stand with this. I think you should go back. . . . He [h]it my granddaughter in the face with a hockey puck. . . . I'm sorry, your honor but you are unfair. []

The [trial court] responded: "Be quiet, sit down. Be quiet everyone." MGM stormed out of the courtroom. The [trial court] did not hold [MGM]'s contemptuous outburst against [Mother]. However, if that is how [MGM] chose[] to behave in a court[]room, [the trial court] was concerned [about] how [MGM] acts and what [MGM] says with the Children [when] no authority is watching. The outburst confirmed the experts' reports of alienation and efforts[, by Mother's] family[,] to sabotage the Children's relationship with their Father. This third-party restriction [on MGM's unsupervised contact with the Children] is consistent with the non-disparagement language of the Final Custody Order and the over-all goal of reuniting Father with his Children.

Trial Court Opinion, 8/19/25, at 6-19 (summarizing headings, footnotes, citations, and unnecessary capitalization omitted; emphasis in original).

Based on our review of the record, we discern no error of law by the trial court in finding it was vested with jurisdiction to issue the Contempt Order. *See J.M.*, 219 A.3d at 650.

Reviewing each of Mother's jurisdictional claims in turn, first, we agree with the trial court that the ninety-day contact restriction directed against

MGM was consistent with the non-disparagement provisions of the Final Custody Order and the overall goal of reuniting Father with his Children, *see* Final Custody Order, 12/17/24, at ¶ 15, 31, especially considering MGM's selfish interruption and comments at the Hearing—amounting to disparagement of Father—about how she could not abide by the court's findings and orders. *See* N.T. Contempt Hearing, 5/15/25, at 99-101; *see also* Final Custody Order, 12/17/24, at ¶ 11 (requiring parties to ensure families and friends comply with non-disparagement of other party). The court had jurisdiction to clarify and temporarily enforce the Final Custody Order in this regard. *See* Pa.R.A.P. 1701(b)(1), (2); *see also Steele v. Steele*, 545 A.2d 376, 378 (Pa. Super. 1988) (noting that trial court may, under appropriate circumstances, alter custody order and issue temporary or interim relief when in children's best interest; recognizing that circumstances change abruptly and emergency temporary relief sometimes necessary). Further, contrary to Mother's claims, the order limiting MGM's unsupervised contact with Children for ninety days did not materially or substantively change the status quo regarding the Children's care, especially where Mother admits that she relied upon other individuals in addition to MGM—including her sister and friends—for assistance in caring for Children. *See* Mother's Brief, at 21 ("Mother primarily relied on [MGM], her sister[,] and sometimes friends[.]"). Indeed, the court preserved the status quo of the Final Custody Order by ensuring compliance with its non-disparagement provisions, as well as by enforcing its overall goal of reuniting Father with his Children. *See* Final

Custody Order, 12/17/24, at ¶¶ 11-12, 15, 31; ***see also*** Pa.R.A.P. 1701(b)(1), (2).

Second, as to Mother's claims that the court substantively altered the Final Custody Order by implementing forward-looking holiday/makeup awards and adding therapy logistics, we disagree. The court found that makeup awards and specified therapy logistics were necessary as a remedy to compensate Father as a direct consequence of Mother's willful refusal to abide by the Final Custody Order, which we conclude is supported by the record and the law, and which we find does not amount to a punishment upon Mother, but rather enforcement of the Final custody Order. ***See*** N.T. Contempt Hearing; 5/15/25, at 84-85, 93-94; ***see also Rhoades***, 874 A.2d at 151-52 (noting sanctions for contempt appropriate where necessary to compensate contemnor's adversary for injuries resulting from contemnor's noncompliance with court order and to compel obedience therewith) ***see also Garr v. Peters***, 773 A.2d 183, 189 (Pa. Super. 2001) ("A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment."); ***Steele***, 545 A.2d 378; ***Travitzky v. Travitzky***, 534 A.2d 1081, 1084 n.3 (Pa. Super. 1987) (noting trial court possesses inherent powers to enforce orders by imposing sanctions for failure to comply with such). Indeed, the court could enforce the Final Custody Order by giving Father more time with Children because Mother admitted at the Hearing that she did not comply with the Final Custody Order's directive to ensure the Children would spend specific time with Father

and engage in therapy. *See* N.T. Contempt Hearing; 5/15/25, at 84-85; *see also* Final Custody Order, 12/17/24, at ¶¶ 15, 20-30. According to the terms of the Final Custody Order, the Children and Father would be further along on the graduated-custody schedule—resulting in more custody time with Children for Father—if Mother did not willfully fail to schedule therapy for the Children in contemptuous violation of the Final Custody Order. *See* Final Custody Order, 12/17/24, at ¶ 15 ("The two younger children require mental health treatment prior to Father's ability to exercise his physical custody."). The additional therapy logistics contained within the Contempt Order are consistent with the overall goal of improving Father's relationship with Children, *see id.*, at ¶¶ 15, 31, and with the requirements of the graduate-custody schedule set forth in the Final Custody Order. *See id.*, at ¶¶ 15, 20-30. Further, we conclude that the court had jurisdiction to clarify the therapy logistics set forth in the Final Custody Order, *see id.*, at ¶¶ 20-30, especially where Mother claimed to be confused on that issue at the Hearing, despite the therapy terms being set out across multiple paragraphs and in great detail—with emphasized importance—in the Final Custody Order. *See id.* at 84 (Mother testifying that she was not "sure how to move forward" once discovering that therapy for Children was not covered by her insurance)[9]; Final Custody Order, 12/17/24, at ¶ 15; *see also* Pa.R.A.P. 1701(b)(1). Thus, we

---

[9] Parties may petition the court to seek modification if an order of the court appears impossible of execution. *See* Pa.R.Civ.P. 1915.3(b). Indeed, "custody orders may be repeatedly modified." *Holler*, 928 A.2d at 332.

conclude that the court properly enforced the Final Custody Order and preserved a status quo of adhering to the graduated-custody schedule by implementing a remedy and rectifying custody time that Father lost because of Mother's contempt. **See** Pa.R.A.P. 1701(b)(1), (2).

Third, we have no question that the court could order Mother to pay $750 to Father's counsel as a means of enforcing the Final Custody Order and in finding her in contempt. **See Rhoades**, 874 A.2d at 151-52; **see also** Pa.R.A.P. 1701(b)(2). Although that provision of the Contempt Order that requires payment of counsel fees is styled as a "fine", the court's order for Mother to pay that sum to Father's counsel is better characterized as an order to pay Father's attorneys' fees, which is permitted upon the court finding that a party is in contempt of a custody order or has acted obdurately.[10] **See** 23 Pa.C.S. § 5323(g)(1)(v). Additionally, the court may award reasonable interim or final counsel fees, costs, and expenses upon finding Mother was obdurate, vexatious, repetitive, or acting in bad faith. **See** 23 Pa.C.S. § 5339; **see also Holler**, 928 A.2d at 332. Indeed, the court found that Mother's purpose was to delay implementation of the graduated-custody schedule contained within the Final Custody Order and that she was in willful contempt of that order, which supports finding she acted obdurately. **See** 23 Pa.C.S. § 5339; **see also Holler**, 928 A.2d at 332. Accordingly, the court had

---

[10] We may affirm the trial court if there is any proper basis in the record for the result reached, which we find applicable in this case. **See Frank v. Frank**, 833 A.2d 194, 195 (Pa. Super. 2003).

jurisdiction to issue the Contempt Order, including a requirement to pay Father's counsel fees, and Mother is not entitled to any relief.

In the end, after our independent review, we can only find that Mother's appeal is—beyond being merely meritless—wholly frivolous and lacks any basis in law and fact, is a vexatious delay tactic, and an abuse of the appellate process, which we cannot condone or disregard. *See Marino by Marino v. Marino*, 601 A.2d 1240, 1250 (Pa. Super. 1992) (stating that reasonable attorneys' fees may be granted where appeal is frivolous or results from vexatious conduct); *see also Holler*, 928 A.2d at 332 (noting that party's conduct meets definition of vexatious if he brought or continued lawsuit without legal or factual grounds and if suit served only to cause annoyance). Indeed, Pennsylvania Rule of Appellate Procedure 2744 allows this Court, *sua sponte*, to impose an award of reasonable counsel fees against a party if we determine that "the appeal is wholly frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate[,] or vexatious." Pa.R.A.P. 2744(1); *see also Feingold v. Hendrzak*, 15 A.3d 937, 943 (Pa. Super. 2011) (awarding appellees' counsel fees to deter appellant from filing future frivolous actions). Instantly, we find Mother's appeal meets these criteria where her appeal has no basis in law or fact, is vexatious to Father, and meant to further delay Mother's compliance with the Final Custody Order, which order she has already repeatedly contemptuously disregarded. Accordingly, we remand this case to the trial

court for a calculation of Father's reasonable appellate counsel fees to be paid by Mother.[11]  *See* Pa.R.A.P. 2744.

Order affirmed.  Case remanded for imposition of counsel fees. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/5/2026

---

[11] For clarity, we order these appellate counsel fees be paid in addition, and above, the $750 "fine" that the trial court ordered and that we affirm in this decision.